**UNITED STATES· of America**

v.

**John Shriver WIGGINS, Petitioner.**

**No. Crim.A. 2:95CR92.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 7, 1999.

Richard G. Brydges, Brydges, Mahan & O'Brien, Va. Beach, VA, Marvin David Miller, Alexandria, VA, for plaintiff.

Arenda L. Wright Allen, U.S. Attorney's Office, Norfolk, VA, for defendant.

**ORDER**

DOUMAR, District Judge.

The Petitioner, John Shriver Wiggins, moves this Court to bypass the Secretary of Treasury and act on his request under 18 U.S.C. § 925(c) for relief from his Federal firearms disabilities imposed by 18 U.S.C. § 922(g)(1). In the alternative, Wiggins moves this Court to order or com-

pel the Secretary of Treasury to act on his request for relief under § 925(c). For the reasons set forth below, Wiggins' motion is **DENIED.**

## I Background

On June 6, 1995, Wiggins was charged in a single count criminal information with knowing and unlawful possession and transfer of a submachine gun in violation of 18 U.S.C. § 922(o)(1). That same day, the Honorable John A. MacKenzie accepted Wiggins' plea of guilty and the matter was continued for sentencing. On September 19, 1995, Wiggins was sentenced to twenty-one (21) months incarceration to be followed by a two-year period of supervised release. Wiggins was released from imprisonment in April 1997 and his supervised release commenced on May 1, 1997. On May 12, 1998, Wiggins filed a motion for early termination of supervised release pursuant to 18 U.S.C. § 3564(c). On May 12, 1998, this Court granted an early termination of supervised release to be effective as of June 1, 1998.

Title 18 U.S.C. § 922(g)(1) prohibits a convicted felon like Wiggins from shipping, transporting or possessing any firearms or ammunition. Title 18 U.S.C. § 925(c) permits any person to apply to the Secretary of Treasury for relief from the disabilities imposed under § 922(g)(1). The Secretary has transferred this authority to grant such relief to the Director of Alcohol, Tobacco, and Firearms. 27 C.F.R. § 178.144.

On October 26, 1998, counsel for Wiggins wrote the Bureau of Alcohol, Tobacco and Firearms ("ATF") requesting an application and information for relief authorized by § 925(c). Under the statutory directive, the ATF considers substantive matters in investigating and reviewing applications. Thus, the ATF takes into account whether an applicant "will ... be likely to act in a manner dangerous to public safety." 18 U.S.C. § 925(c). The ATF also reviews whether "the granting of relief would ... be contrary to the public interest." *Id.* Section 925(c) provides for judicial review for any "person whose application for relief from disabilities is de-

nied by the Secretary." *Id.* On review by the district court, additional evidence may be admitted where failure to do so "would result in a miscarriage of justice." *Id.*

On February 2, 1999, the ATF informed Wiggins that the agency is not accepting applications for restoration of firearms privileges at the present time. The ATF pointed out that Congress has specifically denied funding for ATF investigations or actions on applications for § 925(c) relief through a series of appropriations measures dating back to October 1992. All of the appropriations acts contain a restriction that provides in relevant part: "none of the funds appropriated herein shall be available to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. § 925(c)." *See* Treasury, Postal Service, and General Government Appropriations Act, 1999, Pub.L. No. 105–277, 112 Stat. 2681 (1998); Treasury, Postal Service, and General Government Appropriations Act, 1998, Pub.L. No. 105–61, 111 Stat. 1272 (1997); Treasury, Postal Service, and General Appropriations Act, 1997, Pub.L. No. 104–208, 110 Stat. 3009, 3009–319 (1996); Treasury, Postal Service, and General Government Appropriations Act, 1996, Pub.L. No. 104–52, 109 Stat. 468, 471 (1995); Treasury, Postal Service, and General Government Appropriations Act, 1995, Pub.L. No. 103–329, 108 Stat. 2382, 2385 (1994); Treasury, Postal Service, and General Government Appropriations Act, 1994, Pub.L. No. 103–123, 107 Stat. 1226, 1228 (1993); Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub.L. No. 102–393, 106 Stat. 1732 (1992). The ATF remarked that if and when Congress lifts the restriction on funding, Wiggins should contact their office. Wiggins then filed the petition before this Court.

## II Analysis

Wiggins' petition presents two questions for this Court. First, this Court must decide whether it has jurisdiction to act on a request for § 925(c) relief. Second, this Court must decide whether it may order

or compel the Secretary of Treasury to process an application for § 925(c) relief.

### A. *Jurisdiction*

The question of whether the district courts may bypass agency action and grant relief under § 925(c) is an issue of first impression for the Fourth Circuit. The majority of courts who have examined this issue have held that the district courts are without jurisdiction to act on § 925(c) petitions. *United States v. McGill,* 74 F.3d 64 (5th Cir.1996); *Burtch v. Dep't of Treasury,* 120 F.3d 1087 (9th Cir.1997); *Owen v. Magaw,* 122 F.3d 1350 (10th Cir. 1997). These courts have decided that Congress has suspended the statute's operation by its continual denial of funding for processing § 925(c) applications. *See Id.*

In the Fifth Circuit, for instance, the court in *McGill* invoked the principle that Congress has the power to suspend a statute by an appropriations measure so long as the intention to do so is clear. *McGill,* 74 F.3d at 66. The *McGill* court believed that the legislative history of the restriction on § 925(c) funding provided clear evidence of Congress' intent to suspend relief. *Id.* at 67–68.

In the Ninth Circuit, the *Burtch* court also held that congressional failure to appropriate funds should be construed as a suspension of relevant parts of § 925(c). *Burtch,* 120 F.3d at 1090. Nonetheless, the court in *Burtch* took issue with the Fifth Circuit's reliance on legislative history when, in the opinion of the court, the statute is clear on its face. *Id.* According to the *Burtch* court, the statute states that there must be a denial by ATF before the application may be reviewed by the district court. *Id.* The court concluded that ATF's refusal to act did not constitute a denial. *Id.* The court believed that since Congress had failed to appropriate funds, such a failure should be construed as a suspension of § 925(c) relief. *Id.*

In the Tenth Circuit, the *Owen* court agreed with the Fifth Circuit that the legislative history shows that Congress intended to suspend the operation of § 925(c). *Owen,* 122 F.3d at 1353. In that regard, the court did not follow the Ninth Circuit's reasoning that the legislative history should be ignored in light of a plain reading of § 925(c). *Id.* at 1354, n. 1.

The minority position holds that the district courts have jurisdiction to review § 925(c) applications in the absence of administrative action. *Rice v. Dep't of Alcohol, Tobacco and Firearms,* 68 F.3d 702, 706–707 (3d Cir.1995). In *Rice,* the Third Circuit determined that there was no "clearly stated" intention on the part of Congress to repeal or suspend § 925(c) legislation through appropriations measures. *Id.* at 707. The *Rice* court surmised that the appropriations restriction that "none of the funds appropriated herein shall be available to investigate or act upon applications" for relief under § 925(c) was not a clear statement of legislative intent to preclude judicial review. *Id.* The court in *Rice* also relied on language contained in § 925(c) that the district court may admit additional evidence where "failure to do so would result in a miscarriage of justice." *Id.* at 709. The court believed such statutory authority excused exhaustion of administrative remedies. *Id.*

On the facts in this case, this Court must conclude that it is without jurisdiction to review Wiggins' request for relief under § 925(c).[1] Indeed, Congress has the power to amend, suspend or repeal a statute by an appropriations bill if done so clearly. *Robertson v. Seattle Audubon Soc'y,* 503 U.S. 429, 440, 112 S.Ct. 1407, 1414, 118 L.Ed.2d 73 (1992); *United States v. Dickerson,* 310 U.S. 554, 555, 60 S.Ct. 1034, 1035, 84 L.Ed. 1356 (1940); *Patten v. United States,* 116 F.3d 1029, 1034 (4th Cir.1997); *Department of Labor v. National Mines Corp.,* 554 F.2d 1267, 1275 (4th Cir.1977). The question of whether an

---

**1.** In this respect, this Court's position is in accord with the majority position and particularly with the Fifth and Tenth Circuit's view of the issue.

appropriations measure has suspended relief under the federal statute is a question of congressional intent. *United States v. Mitchell,* 109 U.S. 146, 19 Ct.Cl. 703, 3 S.Ct. 151, 153, 27 L.Ed. 887 (1883).

Congress has clearly intended to suspend § 925(c) relief by denial of funding for investigating and processing applications under the statute. For each fiscal year since 1992, Congress has directed that "none of the funds appropriated [to the Treasury Department] shall be available to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. § 925(c)." *See* Treasury, Postal Service, and General Government Appropriations Act, 1999, Pub.L. No. 105–277, 112 Stat. 2681 (1998); Treasury, Postal Service, and General Government Appropriations Act, 1998, Pub.L. No. 105–61, 111 Stat. 1272 (1997); Treasury, Postal Service, and General Appropriations Act, 1997, Pub.L. No. 104–208, 110 Stat. 3009, 3009–319 (1996); Treasury, Postal Service, and General Government Appropriations Act, 1996, Pub.L. No. 104–52, 109 Stat. 468, 471 (1995); Treasury, Postal Service, and General Government Appropriations Act, 1995, Pub.L. No. 103–329, 108 Stat. 2382, 2385 (1994); Treasury, Postal Service, and General Government Appropriations Act, 1994, Pub.L. No. 103–123, 107 Stat. 1226, 1228 (1993); Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub.L. No. 102–393, 106 Stat. 1732 (1992).

The legislative history underscores Congress' intent to suspend the ability of convicted felons to seek statutory relief. As noted by the Fifth Circuit in *McGill,* 74 F.3d · at 67, the Senate Appropriations Committee reasoned that time and money "would be better utilized to crack down on violent crime." S.Rep. No. 353, 102nd Cong., 2d Sess. 77 (1992). Thus, the Senate Appropriations Committee has inserted language into appropriations bills for the Treasury department prohibiting the use of funds for investigating and acting upon convicted felons' applications for § 925(c) relief. *Id.* In light of Congress' clear intent, this Court must conclude that it is without jurisdiction to review the matter.

### B. *Mandamus*

Nevertheless, Wiggins argues that this Court should order or compel the Secretary of Treasury to conduct an investigation and otherwise act on his request under § 925(c). Wiggins maintains that he seeks only to compel the Secretary to take· action and not to dictate the terms of his decision. Wiggins' legal counsel has not pointed to any authority in support of his argument. In the absence of an articulated legal argument, this Court construes Wiggins' request as a petition for a writ of mandamus.

The actions of a federal agency are limited by statute under the Mandamus and Venue Act. 28 U.S.C. § 1361. Under the statute, the district courts "shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

In addition, the courts may have jurisdiction under the "All Writs" Act to consider relief by mandamus for the actions of a federal agency. 28 U.S.C. § 1651(a). *In re City of Virginia Beach,* 42 F.3d 881, 884 (4th Cir.1994); *Virginia Dep't of Educ. v. Riley,* 23 F.3d 80, 83–84 (4th Cir.1994). As with other federal courts, this Court has the power to issue "all writs necessary or appropriate in aid of [its] ... jurisdiction." 28 U.S.C. § 1651(a). This power to intervene derives from the authority "to preserve a substantial right from irretrievable subversion in an administrative proceeding" where the court might ultimately review the matter. *State of N.C. Envtl. Policy Inst. v. EPA,* 881 F.2d 1250, 1257 (4th Cir.1989) (quoting *Nader v. Volpe,* 466 F.2d 261, 269 (D.C.Cir.1972)). This Court may ultimately review § 925(c) applications for residents like Wiggins who seek judicial review in the district in which they reside. 18 U.S.C. § 925(c).

■ Thus under exceptional circumstances, the courts may exercise review by mandamus "where the agency proceedings suffer from a fundamental infirmity requiring a court to act immediately to protect [petitioner's] rights to a fair proceeding." *State of N.C. Envtl. Policy Inst.*, 881 F.2d at 1256–57 (quoting *Gulf Oil Corp. v. Dep't of Energy*, 663 F.2d 296, 312 (D.C.Cir.1981)). A fundamental infirmity in the agency proceeding justifying this type of relief may include the situation when an agency egregiously delays resolution of a matter. *See In re City of Virginia Beach*, 42 F.3d at 884–885.

■ The exercise of power for a writ of mandamus "is a drastic one, to be invoked only in extraordinary situations." *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976), quoted in *In re City of Virginia Beach*, 42 F.3d at 884. The petitioner must have a clear right to the relief sought, and the agency must have a clear duty to the particular act requested by the petitioner. *In re First Fed. Sav. & Loan Ass'n*, 860 F.2d 135, 138 (4th Cir.1988). In addition, there must be no other adequate remedy available. *Id.* at 138. The district courts may only command an agency to perform a mandatory or ministerial duty and not a discretionary duty. *Id.* Also, the courts have inquired whether there will be irreparable harm if immediate action is not taken. *Riley*, 23 F.3d at 84–85.

The remedy of mandamus under § 1361 or § 1651 is not appropriate in this situation. First, Wiggins can not demonstrate that he has a clear right to the relief he seeks. Congress has suspended operation of applicable provisions of the statute. Therefore, Wiggins has no right to demand that action be taken on his § 925(c) request. Second, the Secretary is not under a clear duty to act on Wiggins' request. If anything, the Secretary is compelled by congressional directive not to act in this case. This is not the situation where an agency's proceedings have been tainted by unreasonable delay. Until Congress lifts the proscription on § 925(c) funding, the Secretary may not proceed on requests for relief under the statute.

Needless to say, Wiggins has no other adequate remedy available to apply for restoration of his rights to own and carry firearms. The judicial function, however, does not encompass the power to enforce legislation suspended by Congress. The judicial branch is constrained by well-delineated powers of separated government. This Court will not intrude on the legislative power and command the Secretary to act when, by passage of a series of appropriations acts, Congress has clearly indicated that the law provides no relief for restoration of firearms privileges. Mandamus is not an appropriate remedy under these circumstances. Wiggins has not met the requirements for a writ of mandamus under § 1361 or § 1651 in this matter.[2]

### III Conclusion

Petitioner John Shriver Wiggins' motion is **DENIED**. Petitioner is **ADVISED** that he may appeal from this judgment by filing a *written* notice of appeal, along with any applicable fees, with the Clerk of this Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510,

---

2. This Court notes that a mandamus action under § 1361 or § 1651 may otherwise be barred by sovereign immunity. Although the Fourth Circuit has not addressed the issue, this Court has held that the Mandamus and Venue Act is not a simple waiver of sovereign immunity. *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F.Supp. 906, 917 (E.D.Va.1994), *aff'd, Virginia Beach Policemen's Benev. Ass'n v. Reich*, 96 F.3d 1440 (4th Cir. Sept.10, 1996) (TABLE); *see also Benvenuti v. Dep't of Defense*, 587 F.Supp. 348, 352 (D.D.C.1984) (holding that All Writs Act does not waive the United States' sovereign immunity). Congress must consent to a cause of action against the United States for the courts to have jurisdiction over such suits. *Radin v. United States*, 699 F.2d 681, 684–85 (4th Cir. 1983). Thus, Wiggins' petition to compel the Secretary of Treasury to take action is barred by sovereign immunity unless Congress consented. Congress has not expressly and specifically waived sovereign immunity over suits arising from applications for restoration of civil rights under 18 U.S.C. § 925(c).

within thirty (30) days from the date of entry of this judgment.

**IT IS SO ORDERED.**